T.C. Memo. 2015-24

UNITED STATES TAX COURT

CHERYL R. SAVELLO, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19033-13.                    Filed February 12, 2015.

<u>Bryan D. Dixon</u>, for petitioner.

<u>Fred Edward Green, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined deficiencies of $3,223 and

$5,025 and accuracy-related penalties under section 6662(a) of $645 and $1,005

for petitioner's tax years 2010 and 2011, respectively.

[*2]   Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

The issues for consideration are (1) whether the activity that petitioner reported on her Schedules C, Profit or Loss From Business, qualified as a trade or business for tax years 2010 and 2011; (2) whether petitioner is entitled to deductions claimed on her Schedules E, Supplemental Income, for tax years 2010 and 2011; and (3) whether petitioner is liable for accuracy-related penalties for tax years 2010 and 2011.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.  Petitioner resided in Nevada when she filed the petition.

Petitioner's Occupation and Business

Petitioner worked as an art teacher in Nevada from 2002 until she retired in 2014.  Petitioner owns Aero-tronics Model Supply Co. (Aero-tronics), a retail sales and services business in Idaho adjacent to her residence.  The business started in a garage and moved to a six-room building and was there during the tax years at issue.  Petitioner inherited the business from her father when he died in

[*3] 2006. Her father began the business, which specializes in model airplanes. A retired individual who is not paid helped her father operate the business daily. After her father's death, petitioner took over the business aspects of Aero-tronics, and she retained the volunteer to oversee the daily functions of the store. She would assist with sales when she was in Idaho. She moved to the Idaho property to spend more time working at Aero-tronics and building the business. When she was not in Idaho, her major involvement in the business was signing checks.

The store has inventory, cash registers, a telephone, display cases, offices, supplies, and workspace. The store is open every day from 8 a.m. to 5 p.m.

Petitioner's Properties

During 2010 and 2011 petitioner owned four properties: one in Utah, one in Idaho, and two in Nevada. The Nevada properties are at Sitting Bull Drive (Sitting Bull) and Orange Jubilee Road (Orange Jubilee). Petitioner also leased an apartment in Nevada during that time. Sitting Bull, Orange Jubilee, and the Nevada apartment are located within a quarter-mile of each other.

Orange Jubilee has one master bedroom and two smaller bedrooms. Petitioner rented out the bedrooms individually. During part of 2010 she rented out the master bedroom to one of her daughters, one of the small bedrooms to her

[*4] other daughter, and the second small bedroom to an unrelated tenant. During 2011 she rented out the master bedroom to one of her daughters.

Petitioner's Tax Returns

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for tax years 2010 and 2011. Petitioner attached a Schedule C for Aero-tronics and a Schedule E for Orange Jubilee to each of her Forms 1040. Petitioner's Forms 1040 were prepared by a third-party tax return preparer.

On her 2010 Form 1040 petitioner deducted a $5,540 business loss reported on her Schedule C and a $22,604 rental real estate loss reported on her Schedule E. On her 2010 Schedule C petitioner reported gross receipts of $23,096, cost of goods sold of $15,872, gross profit of $7,224, and total expenses of $12,764. On her 2010 Schedule E petitioner reported $5,100 of rents received and $27,704 of total expenses.

On her 2011 Form 1040 petitioner deducted a $2,628 business loss reported on her Schedule C and a $18,219 rental real estate loss reported on her Schedule E. On her 2011 Schedule C petitioner reported gross receipts of $21,585, cost of goods sold of $11,316, gross profit of $10,269, and total expenses of $12,897. On her 2011 Schedule E petitioner reported $1,500 of rents received and $19,719 of total expenses.

**[\*5]** In the notice of deficiency respondent determined that petitioner did not operate Aero-tronics as a trade or business within the meaning of section 162 for 2010 and 2011. As a result, respondent disallowed petitioner's Schedule C expense deductions for both tax years. Respondent allowed petitioner to deduct all properly substantiated Schedule C expenses on her Schedules A, Itemized Deductions, to the extent of Aero-tronics' gross income for each tax year. Respondent allowed deductions for $23,096 out of the $28,636 of expenses (including cost of goods sold) petitioner reported on her Schedule C for 2010 and for $21,585 out of the $24,213 of expenses (including cost of goods sold) petitioner reported on her Schedule C for 2011. Respondent also determined that petitioner's rental real estate losses attributable to Orange Jubilee were limited by section 280A and disallowed all Schedule E expenses (except for property tax and home mortgage interest expenses, which respondent allowed as itemized deductions on petitioner's Schedules A) for both tax years. Respondent determined that petitioner is liable for accuracy-related penalties for both tax years.

**[\*6]**                                       OPINION

I.      Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving his or her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner. Petitioner has not claimed or shown that she meets the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

II.     Schedule C

Section 162(a) permits a taxpayer to deduct ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Section 183(b) generally limits the deductions for an activity that is not engaged in for profit to the amount of income that the activity generates.

**[\*7]**  To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and the primary purpose of deriving a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  The Court of Appeals for the Ninth Circuit, to which our decision here is appealable, requires a taxpayer to show that profit was his or her predominant, primary, or principal objective.  See, e.g., Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212; see also Annuzzi v. Commissioner, T.C. Memo. 2014-233.  Deciding whether a taxpayer is carrying on a trade or business requires an examination of all of the facts in each case.  Commissioner v. Groetzinger, 480 U.S. at 36.

A taxpayer must conduct the activity with the requisite profit motive or intent for the activity to be considered a trade or business.  See id. at 35-36; see also Churchman v. Commissioner, 68 T.C. 696, 701 (1977).  The taxpayer generally bears the burden of proving that the requisite profit objective existed.  Westbrook v. Commissioner, 68 F.3d 868, 876 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; see also Rule 142(a); Foster v. Commissioner, T.C. Memo. 2012-207.  Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be actual and honest.  Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec.

**[\*8]** 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981). No single factor or group of factors is determinative. Golanty v. Commissioner, 72 T.C. at 426. While the focus of the test for whether a taxpayer engaged in an activity with the intent to make a profit is the subjective intent of the taxpayer, greater weight is given to objective facts than to the taxpayer's mere

[*9] statement of his or her intent.  Sec. 1.183-2(a), Income Tax Regs.; see also Stasewich v. Commissioner, T.C. Memo. 2001-30.  A final determination is made only after a consideration of all of the relevant facts and circumstances.

We do not believe it necessary to analyze each of the factors enumerated in section 1.183-2(b), Income Tax Regs., to determine whether petitioner operated Aero-tronics with an actual and honest objective of making a profit.  Rather, we focus on the factors we believe more important and applicable in this case.

A.  Manner in Which the Taxpayer Carries On the Activity

One of the factors is the manner in which the taxpayer carries on the activity.  Id. para. (b)(1).  If the taxpayer carries on the activity in a manner substantially similar to other activities of the same nature which are profitable, a profit motive may be indicated.  Id.  A change of operating methods and adoption of new techniques may also indicate a profit motive.  Id.

Petitioner testified that Aero-tronics originated in a garage but is now in a six-room shop adjacent to the Idaho property and was at this location during the tax years at issue.  The store is in a detached building and has its own utilities accounts.  The store has inventory, cash registers, a telephone, display cases, offices, supplies, and workspace.  The store is open every day from 8 a.m. to 5

[*10] p.m. Petitioner testified that her daughter is working on creating a Web site to spur sales.

B.    Expertise of the Taxpayer or Advisers

A second factor is the expertise of the taxpayer or his or her advisers. Id. para. (b)(2). Aero-tronics is a retail sales and services business that specializes in radio-controlled planes. Petitioner's father ran Aero-tronics with help from an unpaid volunteer until his death in 2006. Although petitioner does not know how to build the planes, she testified that she does have previous experience in retail sales. She retained the volunteer who had worked with her father.

C.    Taxpayer's Time and Effort

A third factor is the time and effort expended by the taxpayer in carrying on the activity. Id. para. (b)(3). The fact that the taxpayer devotes much of his or her personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. Id. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity. Id. Having a second job does not necessarily indicate a lack of profit motive because a taxpayer may engage in more than one trade or business simultaneously. See Gestrich v.

**[\*11]** Commissioner, 74 T.C. 525, 529 (1980), aff'd without published opinion, 681 F.2d 805 (3d Cir. 1982); Sherman v. Commissioner, 16 T.C. 332, 337 (1951).

After her father's death petitioner took over the business aspects of Aero-tronics, and she retained the volunteer to oversee the daily functions of the store. She would assist with sales when she was in Idaho. She moved to the Idaho property to spend more time working at Aero-tronics and building the business. When she was not in Idaho, her major involvement in the business was signing checks.

D.    History of Income or Losses

A fourth factor is the taxpayer's history of income or losses with respect to the activity. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioner testified that she would like for Aero-tronics to be profitable. She testified that Aero-tronics may have been profitable for some of the years that her father ran the business. She testified that the business has been even, or close to even, in recent years. She testified that there has always been a market for Aero-tronics' planes, and Aero-tronics has customers that come from around the State to purchase the planes. She testified that there are no other hobby shops within a 150-mile radius of Aero-tronics.

**[*12]** E.     Amount of Occasional Profits

The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent.  Id. para. (b)(7).  Petitioner testified that Aero-tronics may have been profitable for some of the years that her father ran the business.

F.     The Taxpayer's Financial Status

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit.  Id. para. (b)(8).  Petitioner did not report substantial income on her 2010 or 2011 tax return.  She received a modest salary from her position as an art teacher and distributions from a pension or annuity.  She did not receive substantial rental income from her rental properties.

G.     Elements of Personal Pleasure or Recreation

A fifth factor is elements of personal pleasure or recreation.  Id. para. (b)(9).  A profit motivation may be indicated where an activity lacks any appeal other than profit.  Id.  It is not, however, necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits.

**[*13]** Id. An activity will not be treated as not engaged in for profit merely because the taxpayer has purposes or motivations other than solely to make a profit. Id.

Petitioner testified that her father was a radio-controlled-plane hobbyist who started Aero-tronics in the 1960s and oversaw the business until his death in 2006. She testified that she is not a plane hobbyist and does not know how to build the planes.

H.      Conclusion

After considering all of the facts and circumstances, we conclude that petitioner operated Aero-tronics with an actual and honest objective of making a profit. Petitioner does not derive personal pleasure from operating Aero-tronics and does not have substantial income to absorb recurring losses. Although petitioner did not provide evidence of profits for previous years, the tax benefit to her is not significant; and we do not think she would have continued to run the business without an honest expectation of profit. As a result, petitioner is entitled to deduct the properly substantiated expenses that she reported on her Schedules C for tax years 2010 and 2011.[1]

---

[1]Respondent allowed all of the substantiated expenses that petitioner reported on her Schedules C to be deducted on her Schedules A for tax years 2010
(continued...)

**[*14]** III.     Section 280A

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred in carrying on a trade or business.  Section 262(a), however, generally prohibits deductions for personal, living, or family expenses.

Generally, a taxpayer may not claim a deduction with respect to a dwelling unit that he or she uses as a residence.  Sec. 280A(a); see also Langley v. Commissioner, T.C. Memo. 2013-22, at *5.  The taxpayer uses a dwelling unit as a residence if he or she uses the dwelling unit for personal purposes for a number of days which exceeds the greater of 14 days or 10% of the number of days during the year for which the unit is rented at a fair rental value.  Sec. 280A(d)(1); see also Langley v. Commissioner, at *5.

Personal use may also include use by the taxpayer's qualifying relatives.  Sec. 280A(d)(2)(A).  If a qualifying relative uses the property, then his or her use will be imputed to the taxpayer unless the relative is both renting the dwelling at fair rental value and using it as his or her principal residence.  Id. subsec. (d)(2)(A), (3)(A); see also Kotowicz v. Commissioner, T.C. Memo. 1991-563.  A

---

[1](...continued)
and 2011.  In doing so, respondent conceded that these expenses were properly substantiated.  These deductions are allowed on petitioner's Schedules C for tax years 2010 and 2011.

**[\*15]** taxpayer's daughter is treated as a qualifying relative. Sec. 267(c)(4). Whether a property is leased for a fair rental value is determined on the facts and circumstances of each case, including consideration of, among other things, comparable rents in the area. See sec. 280A(d)(2)(C); Langley v. Commissioner, at *5-*6.

Section 280A(c) lists exceptions to the general rule in section 280A(a). Paragraph (3) of subsection (c) provides that "[s]ubsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e))." In general, subsection (e) requires a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his or her deduction to the amount determined after applying the percentage obtained by comparing the number of days the unit is rented at fair rental to the total number of days the unit is used. Bolton v. Commissioner, 77 T.C. 104, 111-113 (1981), aff'd, 694 F.2d 556 (9th Cir. 1982). Paragraph (5) of subsection (c) further limits the deduction authorized in the case of rental use of a residence to the excess of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are attributable to the rental use. In other words, any net

[*16] rental loss cannot be offset against unrelated income. See Feldman v. Commissioner, 84 T.C. 1 (1985), aff'd, 791 F.2d 781 (9th Cir. 1986).

Petitioner testified that her primary residence for 2010 and 2011 was either Sitting Bull or the Nevada apartment. She testified that she kept a bed at Orange Jubilee for her personal use. She testified that she did not stay overnight at Orange Jubilee during 2010, but she did "come and go more frequently" during 2011. She testified that she would stay overnight at Orange Jubilee for Thanksgiving and Christmas. Petitioner testified that she started living at Orange Jubilee at the end of 2011 and that she planned on selling the property. She also testified that when she moved into Orange Jubilee she was living there alone. We do not find petitioner's testimony about her residence during the tax years at issue to be credible.

Petitioner rented out a bedroom at Orange Jubilee to each of her daughters during 2010 and to one of her daughters during 2011. Petitioner's daughters' use will be attributed to petitioner unless her daughters both paid fair rental value to use Orange Jubilee and used it as their principal residence. See sec. 280A(d)(2)(A), (3)(A). Petitioner testified that her daughter who stayed in the master bedroom paid $600 per month and that the rent for small bedrooms was $400 per month. Petitioner also testified that the rent for one of the small

[*17] bedrooms was $350 per month. This is an example of the inconsistencies in petitioner's testimony. Petitioner testified that she calculated the monthly rent on the basis of her monthly mortgage payments of $1,400 and the homeowners association fee of $130. Property managers and other third parties offered to rent Orange Jubilee for $900-$950 per month. The rent petitioner charged does not appear to be below fair market value.

However, petitioner did not provide evidence that she received rent for 2010 and 2011. It was unclear from petitioner's testimony whether all three bedrooms of Orange Jubilee were rented during 2010 and 2011. Petitioner's testimony was vague and inconsistent concerning the rental periods of persons other than her daughters. She testified that for most of 2011 only one daughter was there and that she was paying the difference between the rent and the mortgage. Petitioner provided a blank copy of a rental agreement and no other written evidence.

Petitioner testified that she was lenient with her daughters if they were unable to make their rent payments each month. She testified that her daughters "tried their best to pay me every month" but described their efforts to pay as "an occasional trickle of money". One of petitioner's daughters testified that she was "very spotty with rent in 2010". It is unclear for how many months the daughter

[*18] paid rent for 2010 and 2011. Petitioner testified that she did not know how much rent that daughter had paid during 2010 and 2011.

For tax year 2010 it is unclear how much rent petitioner received and how much rent was paid by her daughters. Even though it appears the rent was set at fair market value, there is no evidence of how much the daughters actually paid. The daughters' use of Orange Jubilee is imputed to petitioner. Petitioner failed to meet the burden of showing that her personal use of the rental property did not exceed 14 days or 10% of the rental days.

For tax year 2011 it seems that only one daughter resided at Orange Jubilee and it is unclear how much rent petitioner received. The daughter's use of Orange Jubilee is imputed to petitioner. For tax year 2011 it is unclear how many nights petitioner stayed at the property. Petitioner failed to meet the burden of showing that her personal use of the rental property did not exceed 14 days or 10% of the rental days.

We find that for both tax years 2010 and 2011 petitioner used Orange Jubilee for personal purposes for a number of days which exceeds the greater of 14 days or 10% of the number of days during the year for which the unit was rented at a fair rental value. The section 280A limitation applies to petitioner's Schedule E rental real estate losses.

**[*19]** IV.    Penalties

Respondent determined that petitioner is liable for accuracy-related penalties pursuant to section 6662(a) for tax years 2010 and 2011.  Section 6662(a) imposes a 20% penalty on any underpayment attributable to, among other things, negligence or disregard of rules or regulations within the meaning of subsection (b)(1).

The Commissioner bears the burden of production regarding the taxpayer's liability for any penalty.  Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once the Commissioner has met this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination was incorrect.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, to exercise due care, or to do what a reasonable and prudent person would do under the circumstances.  Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes any failure by a taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Respondent has demonstrated that petitioner failed to keep accurate records with respect to her rental real estate loss deductions.  Respondent has carried the

**[\*20]** burden of production to show that petitioner acted negligently for tax years 2010 and 2011.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). For purposes of section 6664(c) a taxpayer may be able to establish reasonable cause and good faith by showing reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. To establish good faith and reasonable cause through reliance on professional advice, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner testified that a third party prepared her tax returns. Petitioner did not call the third party to testify, failed to provide evidence that the third party was a competent professional with sufficient expertise, and failed to prove that she provided the third party with necessary and accurate information. Petitioner did not show reasonable cause for failing to keep adequate books and records in order

**[*21]** to substantiate her rental real estate loss deductions properly.  Petitioner is liable for the accuracy-related penalties for tax years 2010 and 2011.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.